THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
TEXAS DALLAS DIVISION

| | |
|---|---|
| MOHAMED ELSADIG § § **Plaintiff,** § § v. § § **LUXOTTICA RETAIL NORTH** § **AMERICA, INC.,** § § **Defendant.** § § § | Civil Action No. 3:16-CV-02055-L |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to the *Order of Reference* dated November 18, 2016 (doc. 21), before the Court is *Defendant's Motion to Dismiss, or in the Alternative to Stay Proceedings and Compel Arbitration,* filed October 6, 2016 (doc. 12). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On July 15, 2016, Mohamed Elsadig (Plaintiff) filed suit in federal district court against Luxottica Retail North America, Inc. (Defendant), alleging claims under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA) as a result of its alleged employment discrimination and retaliation. (doc. 1 at 1, 7.)[1]

Plaintiff is a former employee of Defendant, an eyewear company located in Ohio and conducting business in Texas. (*Id.* at 1-2.) Plaintiff was employed by Defendant from May 2007 until August 7, 2015. (docs. 1 at 2-3; 19-1 at 3.)

---

[1] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

When Plaintiff was hired by Defendant in 2007, he received a copy of the Associate Guide (2006 Guide), which, among other things, included a dispute resolution agreement (2006 Agreement) and an opt-out form.[2]  (doc. 19-1 at 3; 19-2 at 30-34.)  In relevant part, the 2006 Agreement stated:

> You and the Company each agree that, no matter in what capacity, neither you nor the Company will (1) file (or join, participate or intervene in) against the other party any lawsuit or court case that relates in any way to your employment with the Company . . . . Both parties recognize that each side's contractual obligations run exclusively to the other.
>
> . . . .
>
> The Arbitration portion of the Dispute Resolution Agreement is intended to cover all legal disputes that you could otherwise file in court. That includes, but is not limited to, all claims brought under federal, state and local statutory or common law including: the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 (as amended), the Americans with Disabilities Act, the Fair Labor Standards Act, the Family Medical Leave Act, the Employee Retirement Income Security Act, any related or similar state laws, any statutes or common law regarding employment termination and any claims for discrimination, harassment, assault, battery, invasion of privacy, wrongful discharge, wrongful arrest or imprisonment, intentional or negligent infliction of emotional distress, defamation or any other claim related to or arising our of your employment (other than claims for state unemployment compensation and state workers' compensation benefits, which are handled by state administrative agencies).

(doc. 13 at 10-11.)

On May 30, 2007, Plaintiff signed an acknowledgment (2007 Acknowledgment), noting his agreement to the terms of the 2006 Guide and the 2006 Agreement.[3]  (docs. 13 at 7; 19-4 at 1.)  The 2007 Acknowledgment stated, in relevant part:

> Except for the Dispute Resolution Agreement, from which I may opt-out by signing

---

[2] Although received by Plaintiff in 2007, the parties refer to the guide and dispute resolution agreement as Defendant's 2006 guide and dispute resolution agreement.  (*See* docs. 12 at 5; 19 at 13.)

[3] The acknowledgment also applied to other agreements, e.g., a confidentiality agreement, antitrust compliance agreement, and code of ethics and business conduct agreement.  (*See* doc. 19-4 at 1.)

> and returning the Opt-Out of Dispute Resolution Agreement form within 30 days of receipt, I acknowledge and agree that my employment with the Company is conditioned upon my acceptance of the terms of these contractually binding agreements. Absent the exercising of my right to opt-out of the Dispute Resolution Agreement, I agree also to be bound by its terms.

(doc. 13 at 7.)  It also stated:

> Except (a) for the Company's policy of at-will employment . . . and (b) as provided in the following sentence, the Company reserves the right to modify policies and all other terms and conditions of employment at any time.  The Dispute Resolution Agreement, however, cannot be modified as to me without (i) issuance of a new Dispute Resolution Agreement which makes any such changes or modifications, and (ii) my agreement to a new Associate Acknowledgment and Agreement.

(*Id.*)  Defendant has no record that Plaintiff submitted an executed opt-out form to the 2006 Agreement. (*Id.* at 5.) Nor has Plaintiff alleged that he submitted an opt-out form. (*See* docs. 1, 19-1.)

In 2011, Defendant issued a new version of its Associate Guide (2011 Guide), which also contained a dispute resolution agreement (2011 Agreement). (docs. 13 at 4; 19-1 at 3.) The specific language regarding what legal disputes were covered by the two dispute resolution agreements was identical in both the 2006 and 2011 versions. (doc. 13 at 10-11, 17.) Because Plaintiff was a field associate and did not work out of an office or retail location, the 2011 Guide—including the 2011 Agreement—was sent to his home via UPS. (*Id.* at 5.) Plaintiff received the 2011 Guide, but he did not sign or return the acknowledgment of the 2011 Guide to Defendant. (doc. 19-1 at 3.) Nor did he submit the opt-out form to the 2011 Agreement. (doc. 13 at 5; *see* doc. 19-1 at 3.) Plaintiff continued his employment with Defendant until his termination on August 7, 2015. (doc. 1 at 2-3.)

On October 6, 2016, Defendant moved to dismiss or, in the alternative, to stay proceedings and compel arbitration. (doc. 12 at 1.) With a timely filed response and reply, the motion is now ripe for recommendation. (*See* docs. 19, 20.)

3

## II. MOTION TO COMPEL ARBITRATION

Defendant moves to compel arbitration based on language in the dispute resolution agreements, which mandate arbitration of any unresolved disputes. (doc. 12 at 5, 12.)

The Federal Arbitration Act (FAA) "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA provides "for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4.) Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel arbitration under the FAA. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The first step is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Webb*, 89 F.3d at 258); *accord OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (per curiam) (citing *Mitsubishi*, 473 U.S. at 628.).

### A.   Step One – Agreement

The determination of whether the parties agreed to arbitrate the dispute at issue requires consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted); *accord Webb*, 89 F.3d at 258. Courts should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal

4

policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under Texas law,[4] the party seeking to compel arbitration has the initial burden to establish steps one and two above. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam), *abrogated in part by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002); *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2006, no pet.). If the facts alleged in a complaint "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *In re Dillard Dep't. Stores, Inc.*, 181 S.W.3d 370, 377 (Tex. App.—El Paso 2005, orig. proceeding) (per curiam). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *Wachovia Sec.*, 186 S.W.3d at 113. The party opposing arbitration may show, for example, that the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *See Oakwood*, 987 S.W.2d at 573.

Here, Defendant has presented evidence of agreements to arbitrate in the 2006 Guide and 2011 Guide. Both agreements extend to "all legal disputes that you could otherwise file in court," including the ADEA and Title VII. (doc. 13 at 10-11, 17.) The identical language in both arbitration agreements is clearly broad enough to cover Plaintiff's claims arising out of his employment, including racial, religious, national origin, and age discrimination as well as retaliation. Plaintiff acknowledged the terms of the 2006 Agreement and did not submit a opt-out form to that

---

[4] Both parties apply Texas law at the first step of the analysis. (*See* docs. 12 at 11-14; 19 at 6-13.)

agreement, and he continued to work for Defendant after receiving the agreement. (docs. 13 at 7; 19-1 at 3.) Additionally, Plaintiff received the 2011 Agreement and continued to work for Defendant until his termination in 2015. (docs. 13 at 5; 19-1 at 3.) Defendant has met its initial burden of showing that there was an agreement to arbitrate, and that Plaintiff's claims fall within its scope. *See Oakwood*, 987 S.W.2d at 573; *Wachovia Sec.*, 186 S.W.3d at 113.

The burden now shifts to Plaintiff to show why the agreement should not be enforced. *See, e.g., Tanoury v. Symphony Serv. Corp.*, No. 3:12-CV-1142-L, 2013 WL 705121, at *4 (N.D. Tex. Feb. 5, 2013), *adopted by* 2013 WL 706048 (N.D. Tex. Feb. 27, 2013). Plaintiff responds that the 2006 Agreement is illusory and unenforceable, and that he did not acknowledge or agree to the terms of the 2011 Agreement. (doc. 19 at 5-13.)

### 1. 2006 Agreement

Plaintiff argues that the 2006 Agreement is illusory and unenforceable. (doc. 19 at 6.)

Arbitration agreements, like all other contracts under Texas law, must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citations omitted). "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam) (citations omitted). Mutual obligation is lacking if "one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (per curiam) (citing *Halliburton*, 80 S.W.3d at 570). By contrast, "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *AdvancePCS Health*, 172 S.W.3d at 607 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)).

### a. Unilateral modification and termination

Plaintiff first claims the 2006 Agreement is illusory because there is no language in the 2006 Guide or 2006 Agreement that prohibits Defendant from "unilaterally modify[ing] or eliminat[ing], policies, agreements and benefits set out in the Associates Guide," including the dispute resolution agreement. (doc. 19 at 7-8.) In support, he relies on the provision stating that "the Associates Guide may be 'modified or otherwise changed without prior notice to associates.'" (*Id.* at 7) (citation omitted). In reply, Defendant acknowledged the modification language but contends that it does not apply to the 2006 Agreement. (doc. 20 at 3-4.) Defendant responds that Plaintiff overlooked the following preceding phrase: "*With the exception of the Associate Agreements*, this guide may be modified or otherwise changed with or without prior notice to associates." (doc. 20 at 4; *see also* doc. 19-2 at 4) (emphasis added). According to Defendant, the 2006 Agreement was one of the referenced Associate Agreements covered by the exception. (doc. 20 at 4.)

Here, the 2006 Agreement, along with 12 other agreements, was included the list of "Associate Agreements" specifically excepted from unilateral modification. (*See* doc. 19-2 at 4, 28.) Additionally, the 2007 Acknowledgment states in relevant part:

> The Dispute Resolution Agreement, however, *cannot be modified as to me without* (i) issuance of a new Dispute Resolution Agreement which makes any such changes or modifications, *and* (ii) my agreement to a new Associate Acknowledgment and Agreement which incorporates such modifications to the Dispute Resolution Agreement.

(docs. 13 at 7; 19-4 at 1) (emphasis added). Defendant did not have the unilateral ability to modify or terminate the dispute resolution agreement.

### b. Savings clause

Similarly, Plaintiff next claims that the 2006 Agreement is illusory because it did not contain

7

a savings clause. (doc. 19 at 13.) In support, Plaintiff cites to a series of cases, including *Scudiero v. Radio One of Tex. II, LLC*, 547 F. App'x 429, 432 (5th Cir. 2013) (per curiam), where the Fifth Circuit upheld a district court's denial of a defendant's motion to compel arbitration. (doc. 19 at 9-13.) In *Scudiero*, the court considered the arbitration provisions in an employee handbook and held that the defendant's arbitration policy was not a stand-alone contract. *Scudiero*, 547 F. App'x at 432. Specifically, the court reasoned that because the policy was only included in a handbook that could be unilaterally modified and was not separated or distinguished in any way, then it too could be unilaterally modified and was therefore illusory and unenforceable. *Id.*

In its reply, Defendant contends that *Scudiero* and the other cases relied on by Plaintiff contained "arbitration provisions [that] were part of handbooks that contained language indicating the handbook policies could be modified, and made no exception for the arbitration provisions." (doc. 20 at 5.) In contrast, its 2006 Agreement is a stand-alone contract and clearly distinguished from its 2006 Guide. (*Id.* at 6.) Defendant relies in part on *In re 24R, Inc.*, 324 S.W.3d 564 (Tex. 2010) (per curiam) to support its claim. (doc. 20 at 5.)

In *In re 24R*, the Texas Supreme Court held that the parties' arbitration agreement was not illusory, stating the employee manual "does not impose any contractual obligations between" the parties.[5] *24R*, 324 S.W.3d at 568. The Texas Supreme Court then explained that "[a]lthough

---

[5] As explained by the Texas Supreme Court:

> The manual states that "The [company] reserves the right to revoke, change or supplement guidelines at any time without notice," and that "[t]here are a number of [company] policies an applicant needs to understand and agree to before being employed, such as the Arbitration Policy." The arbitration agreement "applies to all types of claims and disputes relating to employment and to termination of employment," and the "arbitrator's award was final and binding." Both [employee] and [company] signed the agreement.

*24R*, 324 S.W.3d at 567.

8

language in the employee manual recognize[d] the existence of the arbitration agreement, this [did] not diminish the validity of the arbitration agreement as a stand-alone contract." *Id.* Accordingly, the Texas Supreme Court held that the agreement was not illusory and did not require a savings clause. *Id.* Defendant asserts that the rationale utilized in *In re 24R* applies here. (doc. 20 at 4-6) (noting "the Agreement is a stand-alone contract separate and apart from the 2006 Guide, and Plaintiff's contention that the Agreement is illusory is baseless").

> Here, the 2006 Guide states:
>
> [O]ther than the Associate Agreements set forth at the end of this guide, nothing herein is contractual in nature and nothing herein is meant to, nor does it, create any contractual obligations by the company. This guide is not a contract of employment and does not obligate the company to maintain any specific level or type of benefit. With the exception of the Associate Agreements, this guide may be modified or otherwise with or without prior notice to associates.

(doc. 19-2 at 4.) Additionally, the 2007 Acknowledgment signed by Plaintiff utilized phrases to distinguish the dispute resolution agreement from the general guide, including "Except for the Dispute Resolution Agreement" and "Absent the exercising of my right to opt-out of the Dispute Resolution Agreement." (doc. 13 at 7.) The very terms of the 2006 Guide and 2007 Acknowledgment differentiate the dispute resolution agreement from the other provisions of the guide. Accordingly, the dispute resolution agreement—although included as one of the "Associate Agreements" provided at the end of the 2006 Guide—was a stand-alone agreement, and the validity of the 2006 Agreement is not diminished because it is presented with the 2006 Guide. No savings clause was required.

In conclusion, because neither party had the unilateral authority to modify or terminate the dispute resolution agreement, and it was presented as a stand-alone contract, the 2006 Agreement

9

is not illusory.[6]

### 2.  *2011 Agreement*

Plaintiff next generally argues that he did not sign an acknowledgment to the 2011 Guide or 2011 Agreement and that he is therefore not bound by its terms. (doc. 19 at 14.) Defendant replies that Plaintiff agreed to the terms of the 2011 Agreement by continuing his employment after receiving notice of the new associate guide and dispute resolution agreement. (doc. 20 at 6.)

Under Texas law, to prove a modification of an at will employment contract, the party asserting the modification must prove two things: (1) notice of the change and (2) acceptance of the change. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). "Generally, when [an] employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law." *Id.* (citation omitted); *accord Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) (noting that acceptance to modification of terms for at-will employment "need not be anything more complicated than continuing to show up for the job and accept wages in return for work"). Likewise, the Texas Supreme Court has found that continued employment is equivalent to acceptance of terms of an arbitration agreement. *In re Dallas Peterbilt, Ltd., LLP*, 196 S.W.3d 161, 163 (Tex. 2006) (per curiam) ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.").

Here, Plaintiff received the 2011 Guide and 2011 Agreement and continued his employment

---

[6] Plaintiff does not argue that the terms of the 2011 Agreement are illusory. (*See* doc. 19.) As noted, however, the specific language regarding what legal disputes were covered by the two dispute resolution agreements was identical in both the 2006 and 2011 versions. (doc. 13 at 10-11, 17.)

until his termination in 2015, even though he did not return an acknowledgment form. (docs. 13 at 3-4; 19-1 at 3.) Nor did he submit an opt-out form to the dispute resolution agreement. (*See* docs. 13 at 3-4; 19-1 at 3.) Because Plaintiff continued working for Defendant after he received the 2011 Guide and 2011 Agreement and he did not submit an opt-out form, he is bound by the terms of the dispute resolution agreement. *See Dallas Peterbilt,* 196 S.W.3d 161 at 163.

**B.     Step Two–Legal Restraints**

The next step is to determine whether any legal restraints external to the agreement foreclose arbitration of the claims at issue here. *See OPE Int'l LP*, 258 F.3d at 445-46. Here, Plaintiff does not argue that any external legal constraints exist. (*See* doc. 19.) Since no legal restraints external to the 2006 or 2011 Agreements foreclose arbitration of Plaintiff's claims, he should be compelled to submit his claims to arbitration. *See, e.g., Tanoury*, 2013 WL 705121, at *5.

### III. MOTION TO DISMISS/STAY THE SUIT

Defendant moves to dismiss the suit on grounds that all of Plaintiff's claims are arbitrable or, alternatively, to stay the proceedings pending arbitration. (doc. 12 at 15.)

Section 3 of the FAA requires that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete if there exists a valid and enforceable arbitration clause. *See* 9 U.S.C. § 3. A stay is mandatory upon a showing that the opposing party has commenced suit "upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.*; *accord Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986). When all of the issues before the Court are arbitrable and there are no other reasons to retain jurisdiction over the suit, it may dismiss the action. *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (noting the Fifth Circuit has "interpreted [9 U.S.C. § 3] to mean

11

only that the district court cannot deny a stay when one is properly requested") (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992)).

This court has found that an action may be dismissed with prejudice rather than stayed when all claims are subject to arbitration. *Vican, Inc. v. Incipio Techs., Inc.*, No. 3:15-CV-2720-L, 2016 WL 687155, at *1 (N.D. Tex. Feb. 19, 2016) (citing *Alford*, 975 F.2d at 1164 ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.")); *see also Sazy v. Depuy Sine, LLC*, No. 3:13-CV-4379-L, 2014 WL 4652890, at *4 (N.D. Tex. Sept. 18, 2014) (dismissing an action with prejudice). "This is so because '[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits [of] the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.'" *Vican*, 2016 WL 687155, at *1 (Quoting *Alford*, 975 F.2d at 1161).

Given that Plaintiff's claims are arbitrable under the dispute resolution agreements, the Court should dismiss the suit with prejudice.

### IV. RECOMMENDATION

Defendant's motion to compel arbitration should be **GRANTED**, and the case should be **DISMISSED with prejudice**.

**SO RECOMMENDED**, this 10th day of July, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE